IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3169-FL

| | |
|---|---|
| JAMES C. MCNEILL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ORDER ) |
| LIEUTENANT MELVIN, SENIOR SERGEANT TAPPS, CORPORAL COLLIER, MAJOR MCRAINEY, CORRECTIONAL OFFICER MCCORMICK, and CORRECTIONAL OFFICER PATE, | ) ) ) ) ) ) ) |
| Defendants. | ) |

Plaintiff filed this action pursuant to 42 U.S.C. § 1983. The matter comes before the court on defendants' motion for summary judgment (DE 42). Also before the court are plaintiff's motions for sanctions (DE 46, 48). Plaintiff responded to defendants' motion for summary judgment, and defendants responded to plaintiff's first motion for sanctions. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion and denies plaintiff's motions. The court dismisses plaintiff's newly raised claims without prejudice.

**STATEMENT OF THE CASE**

On August 24, 2012, plaintiff, a then pretrial detainee and now state inmate, brought this action *pro se* pursuant to 42 U.S.C. § 1983, against defendants Lieutenant Melvin ("Melvin"), Senior Sergeant Tapps ("Tapps"), correctional officer Collier ("Collier"), Chief Jailor McRainey ("McRainey"), Correctional Officer McCormick ("McCormick"), and correctional officer Pate ("Pate"). Plaintiff alleged the following claims pursuant to the Due Process Clause of the Fourteenth

Amendment to the United States Constitution: (1) defendants assigned him to disciplinary segregation without justification; (2) defendants housed him in an unsanitary cell; (3) defendants Pate and McCormick failed to protect him from another inmate throwing liquid on him and exposing him to air borne tuberculosis ("TB"); (4) defendants Pate, McCormick, and Collier acted with deliberate indifference by denying his request for a shower, decontamination, and change of clothes; and (5) McRainey acted with deliberate indifference to his serious medical needs. Plaintiff attached to his complaint a letter he received from the detention center as well as several administrative grievances.

On September 16, 2013, defendants filed a motion for summary judgment arguing that plaintiff is unable to establish a constitutional violation. Alternatively, defendants assert the affirmative defense of qualified immunity. Plaintiff responded to defendants' motion and attached to his motion his own declaration, the detention center rules, and copies of his request for admissions and interrogatories. Plaintiff subsequently filed two motions for sanctions. Plaintiff attached a copy of defendants' response to plaintiff's request for admissions. Defendants responded to plaintiff's first motion for sanctions, but did not respond to plaintiff's second motion for sanctions.

**STATEMENT OF FACTS**

Except as noted below, the undisputed facts may be summarized as follows. The court begins with the facts relating to plaintiff's arrest and confinement in administrative segregation. On September 14, 2010, plaintiff was arrested and charged with assault with a deadly weapon, failure to appear for a possession of marijuana charge, and a felony probation violation. (McRainey Aff. ¶ 11.) While in the booking room, plaintiff became loud, threatening, and disruptive and was placed

2

in a cell in the intake department to complete the booking/intake process.[1]  (Id.)  Once plaintiff was booked and processed, he was taken to the special management unit for housing.  (Id.)  Plaintiff states that the cell walls in the special management unit were covered "from ceiling to floor with built up grime, dirt, spit, with some walls covered smeared with dried food and feces."  (Compl. p. 3.)  After a period of twenty-eight (28) days, plaintiff's custody classification was reviewed and he was transferred into a general population cell on October 12, 2010.  (Tapps Aff. ¶ 8 and Ex. K, p. 1.)

The court now turns to the facts relating to the alleged September 28, 2010, incident.  The parties dispute whether the incident occurred.  According to plaintiff, the incident began when inmate Darnell Lewis ("Lewis") threw liquids through his open "tray flap" on fellow inmate Jeremy Holland ("Holland").  (Compl. p. 4.)  Plaintiff refers to this activity as "gassing" and states that the incident between Lewis and Holland occurred in the presence of defendants Pate and McCormick.  (Id.)  Plaintiff states that Lewis' tray flap remained open.  (Id.)

During this time period, plaintiff was out of his cell for a medical appointment.  (Id. p. 3.)  After his medical appointment, defendant McCormick escorted plaintiff back to the cell block.  (Id.)  McCormick then instructed plaintiff to remain standing in the day room while McCormick retrieved the leg shackle keys.  (Id.)  Inmate Lewis then threw the cups of liquid on plaintiff, hitting plaintiff in the face and eyes.  (Id.)  Although defendant McCormick was outside of the day room during this time, he observed the incident from the control booth doorway.  (Id.)  McCormick then removed plaintiff's leg shackles.  (Id.)

---

[1]  Plaintiff admits he was intoxicated and exhausted when he arrived at the detention center.  (Pl.'s Decl. (DE 45) p. 1.)

Defendant Pate subsequently arrived and ordered plaintiff to walk up the stairway to his cell, which required plaintiff to pass inmate Lewis' cell. (Id.) At such time, Lewis had placed two new cups of urine/toilet water on his tray flap ledge and was threatening to throw them on plaintiff. (Id.) Plaintiff indicated to defendants McCormick and Pate that he did not want to pass Lewis' cell stating that Lewis would again throw toilet water on him. (Id.) Defendants Pate and McCormick continued to order plaintiff to return to his cell despite the fact that Lewis continued to threaten plaintiff that Lewis would "gas" plaintiff. (Id.) Plaintiff then obeyed the defendants' order, and Lewis threw the contents of the cups on plaintiff hitting his face, eyes, and clothing. (Id.) Defendants McCormick and Pate also were hit with the liquid. (Id.)

After the alleged incident, plaintiff requested to have his eyes flushed and that he be decontaminated and provided a change of clothing. (Id.) Defendants McCormick, Pate, and their supervisor, defendant Collier, refused plaintiff's requests. (Id.) Plaintiff additionally states that he submitted grievances regarding the incident to defendants Melvin and Tapps on September 28, 2010, and October 3, 2010, but that the grievances were not processed. (Id.) Plaintiff's letters to defendants McRainey, Tapps, and Melvin regarding the incident, in which he requested medical testing for airborne diseases, also were unanswered. (Id.)

The remaining facts are undisputed. On October 14, 2010, plaintiff was transferred to the custody of the North Carolina Department of Public Safety ("DPS") and was assigned to Craven Correctional Institution ("Craven"). (Ex. K, p. 1.) Upon his arrival at Craven, medical staff conducted a TB skin test, and plaintiff tested positive. (Haq Aff.[2] ¶ 9 and Ex. J p. 10.) Dr. James

---

[2] Dr. Wasi Haq submitted an affidavit in support of defendants' motion for summary judgment. (Haq Aff. ¶ 1.) Haq is employed as a physician by the Cumberland County Department of Public Health and is assigned to the Cumberland County Detention Center. (Id. ¶ 1.)

4

Engelman then prescribed isonozid and vitamin B-6 for a period of nine months. (Ex. J. p. 6 and Ex. K pp. 17-25.) On October 19, 2010, DPS medical staff gave plaintiff a chest x-ray, which indicated that plaintiff's lung fields were "clear, without mass, infiltrate, or effusion" and that "no tuberculosis [was] seen." (Id. Ex. J. p. 14.)

On December 14, 2010, plaintiff was transferred from DPS custody to the detention center. (Id. Ex. K, p. 1.) Petitioner was returned to DPS custody on January 7, 2011. (Id. p. 10.) Petitioner again was transferred to the detention center's custody on January 25, 2011, and returned to DPS custody on February 2, 2011. (Id. p. 7.)

**DISCUSSION**

A.   Motions for Sanctions

Plaintiff's first motion for sanctions seeks unspecified sanctions pursuant to Federal Rule of Civil Procedure 11 against defendants and their attorney Ronnie M. Mitchell. Under Rule 11, by presenting a written motion to the court, an attorney or unrepresented party is certifying, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the motion "is not . . . presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" that "the claims, defenses, and other legal contentions are warranted by existing law;" and that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). The Fourth Circuit has recognized that "maintaining a legal position to a court is only sanctionable when, in applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 153 (4th Cir. 2002) (quotation omitted). The court has discretion to impose sanctions under Rule 11.

5

See Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc., 160 F.3d 170, 177 (4th Cir. 1998) ("The decision to impose sanctions under Rule 11 . . . is within the sound discretion of the trial court." (quotation omitted)).

Here, plaintiff asserts that the court should impose sanctions against defendants and attorney Ronnie M. Mitchell because they failed to mark various items of mail they sent to plaintiff as legal mail and to be opened in plaintiff's presence. In response, counsel for defendants expressed a willingness to mark future mailings to plaintiff as legal mail. Under these circumstances, plaintiff failed to demonstrate that sanctions are warranted or to demonstrate prejudice. Based upon the foregoing, plaintiff's first motion for sanctions is DENIED.

The court now turns to plaintiff's second motion for sanctions, in which plaintiff requests that "the court hand down sanctions against the Defendants for assaulting the Plaintiff on February 7, 2014, and February 11, 2014, while he was in full mechanical restraints and denying him medical treatment for his injuries and examination by a Doctor." (Pl.'s Mot. (DE 48), p. 1.) This motion does not identify any conduct within the purview of Rule 11. Thus, plaintiff's second motion for sanctions is DENIED.

With respect to the new claims raised in plaintiff's motion for sanctions, plaintiff has not filed a motion to amend his complaint to include the new claims discussed in his motion for sanctions. Moreover, permitting plaintiff the opportunity to amend his complaint at this juncture would be prejudicial to defendants. For these reasons, the court does not consider the new claims raised in plaintiff's motion for sanctions as part of this action, and such claims are DISMISSED without prejudice. See United States v. ex rel. DRC, Inc. V. Ouster Battles, LLC, 472 F. Supp. 2d

6

787, 796 (E.D. Va. 2007) (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000)), aff'd 562 F. 3d 295 (4th Cir. Apr. 10, 2009).

B.  Motion for Summary Judgment

1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2.  Analysis

Defendants raise the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

### a. Placement in Administrative Segregation

Plaintiff contends that his due process rights were violated because he was placed in administrative segregation without having incurred an infraction or rule violation. "[A] detainee may not be punished prior to the adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535-36 (1979). To prevail on a procedural due process claim, an inmate first must demonstrate that he was deprived of life, liberty, or property by government action. Sandin v. Conner, 515 U.S. 472 (1995). An inmate does not have a liberty or property interest in a particular custody classification, even where disciplinary segregation is involved, unless the inmate can demonstrate that the restraints "'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (quoting Sandin, 515 U.S. at 484); see McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise.")

Here, defendants state that plaintiff was placed in administrative segregation upon his admission to the detention center because he become loud, threatening, and disruptive in the detention center's booking room.[3] (McRainey Aff. ¶ 11.) Plaintiff, himself, admits that he was intoxicated and exhausted when he entered the detention center. (Pl.'s Decl. (DE 45) and attach. p. 1.) Following the reasoning in Sandin, the court finds no liberty interest was implicated in the decisions associated with plaintiff's initial placement on administrative segregation center, as it is not atypical for inmates to be placed on administrative segregation for any number of reasons. See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d

---

[3] Defendants further contend that plaintiff had a considerable history of being very disruptive at the detention center in the past, causing and being involved in altercations, threatening staff, and exposing himself to detention center and medical staff. (McRainey Aff. ¶ 11.)

8

464, 469 (4th Cir. 1999) ("Prison officials should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.") (internal quotation omitted); Beverati, 120 F.3d at 502;[4] Backey v. South Carolina Dept. of Corrections, No. 94-7495, 1996 WL 1737, at *1 (4th Cir. Jan. 3, 1996) (finding that even allegations of "wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke the due process right[] . . . to notice of the reasons for such placement"); see also, Jones v. Walker, 358 F. App'x 708, 712 (7th Cir. 2009) ("[Inmates] do not have a liberty interest in avoiding placement in discretionary segregation meaning segregation imposed for administrative, protective, or investigative purposes.") (internal quotation omitted); Phomphackdi v. Spartanburg County, No. 9:05–3084, 2006 WL 4391127, at *8–9 (D.S.C. Nov. 20, 2006) (addressing a pretrial detainee's claim that being placed in administrative segregation for a period of eight months violated his rights and concluding that "[t]his type of confinement does not implicate any due process rights"). Further, nothing in the record shows that the nature of plaintiff's assignments to administrative segregation at the detention center for approximately twenty-eight (28) days comprised the atypical hardships

---

[4] In Beverati, 120 F.3d at 502, the Fourth Circuit determined that the following conditions in administrative segregation did not implicate Plaintiffs' liberty interest:

> ... cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

9

contemplated by Sandin or Beverati. See Fulks v. Metts, No. 06-980, 2007 WL 2104845, at *9 (D.S.C. July 17, 2007) (Placement of violent inmate in segregation for security reasons was reasonably related to legitimate penological interest and was not impermissible punishment); (Tapps Aff. ¶ 8 and Ex. K, p. 1). Because plaintiff failed to establish a constitutional violation, defendants are entitled to qualified immunity for this claim.

To the extent plaintiff contends that defendants violated the detention center's policies and procedures as to his custody classification, this claim too warrants dismissal. Allegations that defendants did not follow policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741, 754 (1978); Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) (stating that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). Thus, defendants are entitled to qualified immunity for this claim.

      b.      Failure to Protect

Plaintiff contends that, on September 28, 2010, Pate and McCormick violated his constitutional rights when they failed to protect him from fellow inmate Darnell Lewis ("Lewis") throwing cups containing toilet water and urine on plaintiff. To establish a claim for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). To be deliberately indifferent, a prison official must "know of and disregard an objectively serious . . . risk of harm." Id. A showing of mere negligence does not qualify as deliberate indifference. Davidson v. Cannon, 474 U.S. 344, 347 (1986); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

10

Beginning with the first prong of the test, plaintiff has not established any injury from the alleged incident. Although plaintiff contends that he contracted TB from Lewis' urine, the record reflects that TB is an airborne disease spread only by air droplets and is not transmitted by non-pulmonary emitted liquids, such as urine. (See Haq Aff. ¶¶ 2, 9, 10.) Thus, plaintiff has not established that he suffered any injury as a result of the alleged incident. Based upon the foregoing, plaintiff has not established a constitutional violation, and Pate and McCormick are entitled to qualified immunity.

To the extent plaintiff claims that the denial of a shower, decontamination, or change of clothing following the alleged incident violates his Fourteenth Amendment rights, his claim fails. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (stating that conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society."); see, e.g., Shakka v. Smith, 71 F.3d 162, 167-68 (4th Cir. 1995) (finding inmate's constitutional rights were not violated where he was not given access to a shower for three days after having feces thrown on him by fellow inmates because he had access to water with which to clean himself); Davenport v. DeRobertis, 844 F.2d 1310, 1316-1317 (7th Cir. 1988), cert. denied, 488 U.S. 908 (1988) (holding that restricting inmates in segregated confinement to one shower per week did not violate their constitutional rights); see also, Ham v. McCall, Civ. A. No. 6:13–694–JMC, 2014 WL 51229, at *3–4 (D.S.C. Jan. 6, 2014) (granting summary judgment to the defendants where the plaintiff alleged, inter alia, two showers in September 2012; five showers in October 2012; three showers in November 2012; and two showers in December 2012, stating that "the facts are not sufficiently distinguishable from Davenport and other cases in which the opportunities to shower for inmates in segregated confinement were severely reduced"). Further, the record reflects that the

11

detention center has no record of a September 28, 2010, incident involving plaintiff. (Pit Aff. ¶ 2; Collier Aff. ¶ 4.) Nor has plaintiff presented any evidence, aside from his bare conclusory allegations, that the incident occurred, which are insufficient to defeat summary judgment. See National Enterprises, Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000); see also, Chafin v. State Farm Fire and Casualty Company, No. Civ. A. 2:03-0153, 2003 WL 23571723, at *2 (S.D.W. Va. Nov. 20, 2003) ("Self-Serving statements are not enough to defeat a motion for summary judgment."), aff'd, 98 F. App'x 250 (4th Cir. 2004). Based upon the foregoing, plaintiff failed to establish a constitutional violation, and defendants' are entitled to qualified immunity.

          c.      Interference with Grievance Procedure

Plaintiff alleges that the detention center administrators violated his rights pursuant to the Fourteenth Amendment because they attempted to suppress his grievances. However, a plaintiff does not have a constitutional right to have available or to participate in a grievance process. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Smith v. Ray, No. 02-6199, 2002 WL 1162396 (4th Cir. June 3, 2002); see also, Oliver v. Myers, No. 5:7:08-CV-558, 2008 WL 5212409, at *4 (W.D. Va. Dec. 12, 2008) (stating that "because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' right of access to the courts") (citation omitted), appeal dismissed, 335 F. App'x 317 (4th Cir. June 8, 2009). Further, even if available, a prison grievance procedure does not confer any substantive right upon inmates. Adams, 40 F.3d at 75. Thus, a prison official's alleged failure to comply with the grievance procedure is not actionable under § 1983.

12

d.  Conditions of Confinement Claim

Plaintiff alleges that the conditions of his confinement violated his right to be free from cruel and unusual punishment pursuant to the Fourteenth Amendment to the United States Constitution. As a pretrial detainee, plaintiff's claims are evaluated under the Due Process Clause, rather than the Eighth Amendment. Bell, 441 U.S. at 535 n. 16. However, the due process rights of detainees are at least coextensive with the Eighth Amendment rights of convicted prisoners, and perhaps greater. Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997), abrogated on other grounds by, Wilkins v. Gaddy, 559 U.S. 34 (2010). Accordingly, plaintiff's Fourteenth Amendment due process claims will be analyzed under the Eighth Amendment.

"In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (internal quotation omitted). The Supreme Court has explained that the first prong is an objective one—the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious"—and the second prong is subjective—the prisoner must show that "subjectively the officials act[ed] with a sufficiently culpable state of mind." Strickler, 989 F.2d at 1379 (quotations omitted). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). In order to demonstrate such an extreme deprivation, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," Strickler, 989 F.2d at 1381, or demonstrate a substantial risk of

13

such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions. See Helling v. McKinney, 509 U.S. 25, 33–35 (1993).

The court focuses its analysis of this claim on the subjective prong of the Eighth Amendment test–whether defendants acted with deliberate indifference to plaintiff's alleged unsanitary cell. Plaintiff has not presented any evidence indicating that he complained about his alleged unsanitary cell to any defendant and that such defendant ignored plaintiff's complaint. Rather, plaintiff admits that when he complained to the Cumberland County Health Department about the alleged unsanitary conditions, detention center officials responded by pressure washing and painting the special management unit of the detention center. (Pl.'s Decl. (DE 45), p. 4.) Further, the defendants presented evidence that the cells in the segregation unit are cleaned before an inmate is assigned. (Trotter Aff. ¶ 19 and Stephenson Aff. ¶ 5.) Because plaintiff has not produced any evidence to show that any defendant knew of and disregarded any unsanitary cell condition, plaintiff fails to establish a genuine issue of material fact as to his Fourteenth Amendment claim, and defendants are entitled to qualified immunity. Cf. Williams v. Griffin, 952 F.2d 820, 826 (4th Cir.1991) (prisoner sufficiently raised factual dispute as to deliberate indifference as to conditions of confinement where reports in the record showed that prison officials were made aware of need for critical repairs to prisoner cells but did not take corrective action); Morissette v. Peters, 45 F.3d 1119, 1123 (7th Cir. 1995).

e. Deliberate Indifference to Serious Medical Needs

As with prison conditions, the Due Process Clause of the Fourteenth Amendment governs a pretrial detainee's claim of denial of medical care, and the court also analyzes this claim pursuant to the Eighth Amendment. Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). As stated, "[i]n

14

order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler, 989 F.2d at 1379 (internal quotations omitted).

With respect to the objective component of the test, the plaintiff must demonstrate that the medical need was "sufficiently serious." A sufficiently serious medical need is one that requires medical treatment. Brice v. Virginia Beach Corr. Cntr., 58 F.3d 101, 104 (4th Cir. 1995).

As for the subjective prong of the test, "[d]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka, 71 F.3d at 166. An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

The court begins the plaintiff contention that defendant McRainey refused to administer plaintiff's TB medication prescribed by DPS physician Dr. Engelman for the following time periods: (1) December 13, 2010, through December 14, 2010; (2) January 3, 2011, through January 7, 2011; and (3) January 25, 2011, through February 2, 2011. McRainey, in response, submitted an affidavit stating that neither he, as Chief Jailor, nor his staff of correctional officers have any control over the detention center's health care program or health care decisions. (McRainey Aff. ¶ 8.) Rather,

15

medical examinations, treatment, and administration of medications were the sole responsibility of the detention center's health program staff. (Id. ¶ 7 and Haq Aff. ¶ 5.) As a non-medical detention center employee, McRainey was entitled to rely on medical judgments and expertise of prison physicians and medical personnel concerning the course of treatment deemed necessary for prisoners. See Shakka, 71 F.3d at 167 (citation omitted); Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002) ("Prison officials cannot substitute their judgment for a medical professional's prescription."). Further, there is no evidence to suggest that McRainey or any other defendant had any knowledge that plaintiff was not receiving any prescribed TB medications. Thus, because plaintiff failed to establish a constitutional violation, defendants' are entitled to qualified immunity.

Even if plaintiff could bring a claim against McRainey arising out of any alleged delay in providing plaintiff TB medication, "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Abraham v. McDonald, 493 F. App'x 465, at *1 (4th Cir. Sept. 7, 2012) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)); Webb v. Hamidullah, 281 F. App'x. 159, 166 (4th Cir. 2008) ("An Eighth Amendment violation only occurs [] if the delay results in some substantial harm to the patient."). Here, as stated, there is no evidence that McRainey substantially delayed or intentionally interfered with plaintiff's access to healthcare. Further, plaintiff has not alleged any "substantial harm" as a result of any alleged delay. Rather, the record reflects that plaintiff was diagnosed with latent, and not active, TB. (Haq. Aff. ¶ 3.) Further, the record reflects that plaintiff did not suffer from any symptoms of active TB and ultimately received treatment for his latent TB. See (Ex. J, pp. 11-14, 17-25.) Plaintiff has not stated that any alleged delay caused him any substantial harm. Thus,

16

plaintiff failed to establish a constitutional violation and defendants are entitled to qualified immunity.

Finally, to the extent plaintiff alleges any defendant acted with deliberate indifference to his need for TB testing following his alleged exposure to TB on September 28, 2010, this claim is meritless. The record reflects that plaintiff received a TB skin test on October 14, 2010. (Ex. J. pp. 11, 12.) The record further reflects that, although plaintiff's TB skin test was positive in October 2010, his October 19, 2010 x-ray showed no TB. (Id. p. 14.) Thus, plaintiff cannot satisfy the objective or subjective prongs of the Eighth Amendment test, and defendants are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, plaintiff's motions for sanctions (DE 46, 48) are DENIED. The claims plaintiff asserts in his March 11, 2013, motion for sanctions are DISMISSED without prejudice. Defendants' motion for summary judgment (DE 42) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 22nd day of September, 2014.

LOUISE W. FLANAGAN
United States District Judge